**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Case No. 09-cv-02434-WJM-MJW

CINDY H. SANDOVAL,

     Plaintiff,

v.

ANNA MARTINEZ-BARNISH,

     Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION TO STRIKE AFFIDAVIT**

---

     Plaintiff Cindy H. Sandoval brings this action against Defendant Anna Martinez-Barnish alleging that Defendant committed assault, battery, and extreme and outrageous conduct during an incident that occurred at Plaintiff's place of employment. Plaintiff further alleges that Defendant intentionally interfered with Plaintiff's at-will employment contract. Before the Court are: (1) Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 160); (2) Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 172); and (3) Plaintiff's Motion to Strike the Affidavit of Julie Riel (ECF No. 175).

     For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Motion to Strike is denied.

## I. BACKGROUND

**A.     Factual Background**

The following facts are taken from the record and are undisputed:

Plaintiff was an employee of Navarro Research and Engineering, Inc. ("Navarro") from March 28, 2005 to November 30, 2010.  (Tr. of Aug. 18, 2010 Evid. Hrg. at 7-8, attached to Def. SJ Motion, Ex. 1.)  Navarro provided administrative support services for the United States Department of Energy ("DOE") at the DOE's Golden Field Office ("GFO") in Golden, Colorado.  (*Id*.)  In February 2008, Plaintiff began working as a Freedom of Information Act ("FOIA") specialist for Navarro.  (Dep. of C. Sandoval, at 20:7-10.)  Her duties included reviewing all FOIA requests at GFO and coordinating with DOE to gather responsive information.  (*Id*. at 20:17-21:3.)

Defendant Anna Martinez-Barnish was the GFO's Public Affairs Specialist and FOIA/Privacy Act Officer.  (Aug. 9, 2011 Order and Judgment (ECF No. 155) at 2.)  Defendant had daily interactions with Plaintiff for approximately one and a half years.  (Tr. of Aug. 18, 2010 Evid. Hrg. at 21.)  Christopher Powers, the GFO Chief of External Affairs, was Defendant's supervisor.  (*Id*. at 7.)

During the week of July 13, 2009, Plaintiff reported to Defendant that she was being bitten by flying ants at her work station.  (Aug. 9, 2011 Order and Judgment at 3.)  Defendant subsequently reported this problem to her superior, Mr. Powers, and to the DOE.  (*Id*.)  During that week, Plaintiff continued to be bitten by ants.  (Tr. of Aug. 18, 2010 Evid. Hrg. at 22.)

On the morning of July 21, 2009, Plaintiff called Defendant from her work area

-2-

and told Defendant that she had received additional flying ant bites.  (Aug. 9, 2011

Order and Judgment at 3.)  Defendant then called Plaintiff on her cell phone and asked

her to meet Defendant and Shirley Contreras, another Navarro employee, in the

women's restroom at GFO.  (Tr. of Aug. 18, 2010 Evid. Hrg. at 25, 50, 56.)  Plaintiff,

Defendant, and Ms. Contreras then proceeded to go into a large stall inside the

women's restroom.  (*Id*. at 56-57.)

Inside of the restroom stall, during the incident that followed, Defendant asked

Plaintiff to show Defendant and Contreras the ant bites.  (*Id*. at 26.)  Plaintiff lifted up

her shirt and unbuttoned her pants, showing Defendant and Ms. Contreras red bite

marks throughout her body.  (*Id*.)  When Plaintiff was turned with her back towards

Defendant and Ms. Contreras, Defendant touched and moved Plaintiff's underwear.

(*Id*. at 26, 43, 44, 60.)

On or about July 29, 2009, DOE received a written notification from Navarro

regarding the incident between Plaintiff and Defendant.  (J. Riel Aff., ¶ 9, attached to

Def. SJ Motion, Ex. 3.)  Navarro requested that DOE investigate the incident.  (*Id*.)  In

addition, Plaintiff requested to have no further contact with Defendant.  (*Id*.)

On September 28, 2009, Plaintiff asked to be re-assigned to a job as a

"Procurement Specialist I", a lateral position, so that Plaintiff would not have to work

with Defendant.  (Navarro Letter to Plaintiff, attached to Pl. SJ Motion, Ex. D.)

### B.   Procedural History

Plaintiff filed her initial Complaint on October 5, 2009, and the case was removed

from Jefferson County, Colorado District Court to this Court on October 14, 2009.  (ECF

No. 1.)  Plaintiff bring claims against Defendant for: (1) assault, (2) battery, (3) extreme and outrageous conduct, and (4) intentional interference with contractual relations. (ECF No. 185.)  Plaintiff's claims stem from the incident described above.  (*Id.*)

On June 18, 2010, Interested Party the United States filed a certification stating that Defendant was acting within the scope of her employment at the time of the incident and moved to substitute itself as a sole defendant under 28 U.S.C. § 2679. (ECF No. 48.)  Plaintiff objected to the certification and an evidentiary hearing was held on August 18, 2010.  On August 24, 2010, Magistrate Judge Michael J. Watanabe found Defendant was not acting within the scope of her employment during the incident and recommended that the United States's certification be denied.  (ECF No. 91.)  On September 17, 2010, the Court issued an Order Adopting the Recommendation of the United States Magistrate Judge.  (ECF No. 103.)

The United States and Defendant filed interlocutory appeals of the Order to the Tenth Circuit Court of Appeals.  (ECF Nos. 104, 106.)  On August 9, 2011, the Tenth Circuit affirmed the Court's decision to deny the United States's Motion to Substitute. (ECF No. 155.)

On October 17, 2011, Plaintiff filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 asking the Court to grant summary judgment in her favor on all claims.  (ECF No. 160.)  On November, 09, 2011, Plaintiff filed a Supplement to her Motion for Summary Judgment.  (ECF No. 168.)  On November 30, 2011, Defendant filed a Response to Plaintiff's Motion (ECF No. 173), and Plaintiff filed her Reply to Defendant's Response on December 1, 2011 (ECF No. 176).

On November 23, 2011, Defendant filed her Motion for Summary Judgment.

(ECF No. 172.)  Defendant seeks summary judgment on all of Plaintiff's claims and further seeks summary judgment on Plaintiff's request for economic and punitive damages.  (*Id.*)  On November 30, 2011, Plaintiff filed a Response to Defendant's Motion (ECF No. 174), and Defendant filed her Reply to Plaintiff's Response on December 9, 2011 (ECF No. 178).

Additionally, on November 30, 2011, Plaintiff filed a Motion to Strike the Affidavit of Julie Reil, which is attached to Defendant's Motion for Summary Judgment as Exhibit 3.  (ECF No. 175.)  Plaintiff requests that the Court strike Paragraph Nos. 5, 8, 9, 10, 12, 13, 15, 17, 19, 21, 22, 23 and 24 of Ms. Riel's affidavit and strike any portion of Defendant's Summary Judgment Motion that refers to these paragraphs.  (*Id.*)  On December 1, 2011, Defendant filed a Response to Plaintiff's Motion to Strike.  (ECF No. 177.)

These Motions are now ripe for resolution.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v.*

*U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248.  The

Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527

(10th Cir. 1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case. *Celotex*, 477 U.S. at 325.  Where the non-movant

bears the burden of proof at trial, the non-movant must then point to specific evidence

establishing a genuine issue of material fact with regard to each challenged element.

*See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms.,*

*Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

## III.  ANALYSIS

### A.    Plaintiff's Motion to Strike

Plaintiff has moved to strike Paragraph Nos. 5, 8, 9, 10, 12, 13, 15, 17, 19, 21,

22, 23 and 24 in the affidavit of Julie Riel, and to strike any portion of Defendant's

Summary Judgment Motion that refers to these paragraphs.  (ECF No. 175.)  Plaintiff

argues that these paragraphs are not based on Ms. Riel's personal knowledge

Plaintiff's Motion to Strike is denied for failure to confer with the Defendant's

counsel as required by D.C.COLOLCivR 7.1A.[1]  However, even if Plaintiff's counsel had

---

[1]      D.C.COLOLCivR 7.1A states: "Duty to Confer. The court will not consider any
motion, other than a motion under Fed. R. Civ. P. 12 or 56, unless counsel for the moving party

conferred with Defendant's counsel as required, Plaintiff's Motion to Strike would still fail.  Contrary to Plaintiff's argument, Ms. Riel has declared that she is knowledgeable about the matters asserted in her affidavit "based upon [her] personal knowledge and information made known to [her] from official records reasonably relied upon by [her] in the course of [her] employment" at DOE.  (ECF No. 172, Ex. 3 at 1.)  Such a statement complies with the personal knowledge requirements of Federal Rule of Evidence 56(e), and Plaintiff's speculation that Ms. Riel does not have such personal knowledge is insufficient to place the affiant's averment regarding her personal knowledge genuinely into dispute.  *See Williams v. Penske Transp. Servs., Inc.*, 46 F. Supp. 2d 1135, 1140 n.8 (D. Kan. 1999) (affidavit sufficient were it "expressly states that the information contained therein is based on personal knowledge.").  Further, despite Plaintiff's arguments, it appears that the substance of Ms. Riel's sworn statements would be admissible as evidence at trial.

Accordingly, Plaintiff's Motion to Strike the Affidavit of Julie Riel is denied.

**B.     Cross-Motions for Summary Judgment**

Plaintiff has asked the Court to grant summary judgment in her favor on all claims.  Defendant also seeks summary judgment on all of Plaintiff's claims, and further seeks summary judgment on Plaintiff's request for economic and punitive damages. The Court will discuss each claim in turn below.

**1.     Assault and Battery (First and Second Claims)**

---

or a *pro se* party, before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel or a *pro se* party to resolve the disputed matter. The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule."

Plaintiff and Defendant both assert that they are entitled to summary judgment on Plaintiff's claims for assault and battery.

Assault and battery are separate but similar torts, with similar elements. To prove assault, a plaintiff must establish that: "(1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive." *Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1198 (Colo. App. 2008) (citing *Bohrer v. DeHart*, 943 P.2d 1220, 1225 (Colo. App. 1997)). "The elements of battery are similar, except that the contact must have actually resulted." *Id.*

To prove the requisite intent for assault or battery, the plaintiff must establish "dual intent," meaning that "the defendant both intended the contact and intended it to be harmful or offensive." *White v. Muniz*, 999 P.2d 814, 818 (Colo. 2000). It is insufficient to only show that the contact appeared to be harmful or offensive (or that it merely resulted in harmful contact), if the evidence does not also establish that the defendant knew and intended, to a substantial certainty, to bring about a harmful or offensive contact. *Id.*

Furthermore, a defendant who intentionally inflicts upon another an offensive, although non-harmful, bodily contact, is liable for assault or battery even though the act committed was not done with the intent to cause actual physical harm. *See* Restatement (Second) of Torts § 16(1) (1965) ("Restatement").

Defendant contends that Plaintiff's assault claim fails because Plaintiff consented to the bodily search.  Consent is an affirmative defense to assault or battery. *See Espander v. Cramer*, 903 P.2d 1171, 1172-73 (Colo. App. 1995).  Consent is defined as: (1) a willingness in fact for conduct to occur which may be manifested by action or inaction and need not be communicated to the actor; and (2) if words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.  *See* Restatement § 892.  "One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." *Id*. at 892A(1).

The Court finds that there is a genuine dispute of fact as to whether Defendant committed assault and battery against Plaintiff during the incident that occurred inside the women's restroom at GFO.  Evidence has been submitted that could be construed as showing that: (1) Defendant intentionally took it upon herself to conduct a physical search of Plaintiff's body, despite the fact that Defendant had been instructed not to do so by her superiors (Tr. of Aug. 18, 2010 Evid. Hrg. at 56:22-25, 57:11-25, 60:13-24); (2) Defendant intended to make offensive contact with Plaintiff and place Plaintiff in apprehension of such contact (*Id.*); and (3) that the physical search of Plaintiff by Defendant, which included Defendant physical moving Plaintiff's underwear, was offensive (*Id*. at 44: 3-16).  However, contradictory evidence has also been submitted demonstrating that Defendant was acting with the intent to help Plaintiff, and that Defendant did not intend to cause any harmful or offensive contact.  (Aug. 9, 2011 Order and Judgment at 3; Tr. of Aug. 18, 2010 Evid. Hrg. at 24-25, 50-51, 56.)

Based upon this evidence, and other evidence set forth in the summary judgment briefs, a jury could reasonably find that Defendant committed assault and battery upon Plaintiff during the bathroom incident in question.  Further, while Defendant argues that Plaintiff consented to the search of her person, Plaintiff has submitted contradictory evidence showing that she was instructed, rather than asked, to remove items of clothing.[2]  (Tr. of Aug. 18, 2010 Evid. Hrg. at 43:10-25, 44:1-16, 60:5-19.)  As such, material disputes of fact exist regarding these claims.

Accordingly, both Plaintiff's and Defendant's Motions for Summary Judgment on the assault and battery claims are denied.

## 2.    Extreme and Outrageous Conduct (Third Claim)

Plaintiff and Defendant have also both moved for summary judgment on Plaintiff's claim for extreme and outrageous conduct.

"In Colorado, to state a claim for intentional infliction of emotional distress by outrageous conduct, a plaintiff must allege behavior that is extremely egregious." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999).  To show that a defendant engaged in the tort of outrageous conduct, the plaintiff must establish that: (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) that caused the plaintiff severe emotional distress.  *See Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo.

---

[2]      Defendant also argues that Plaintiff cannot establish that Defendant assaulted her because Plaintiff's back was turned to Defendant while Defendant, without asking Plaintiff, touched and moved Plaintiff's underwear.  Taking the facts in the light most favorable to Plaintiff, where Plaintiff was instructed to remove her clothing, the notion that Defendant did not commit assault merely because Plaintiff's back was turned is without merit.

App. 2002); *see also Lee v. Colo. Times*, 222 P.3d 957, 963 (Colo. App. 2009) (quoting Restatement § 46(1)).  "[T]he level of outrageousness required to create liability is extremely high. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice." *Archer*, 70 P.3d at 499.

"In determining whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct." *Lee*, 222 P.3d at 963. The Court must remain mindful, however, that  "[t]he question of whether certain conduct is outrageous is ordinarily a question for the trier of fact, . . . " *Simmons v. Prudential Ins. Co. of Am.*, 641 F. Supp. 675, 683 (D. Colo. 1986) (internal citations omitted).

The Court finds that both parties have submitted sufficient evidence to create a genuine issue of material fact as to whether Defendant's actions described above constitute extreme and outrageous conduct.  Plaintiff has submitted evidence that she was instructed to remove articles of clothing and that Defendant pulled down Plaintiff's underwear without her consent.  (Tr. of Aug. 18, 2010 Evid. Hrg. at 24-25, 26:10-15, 43:18-25, 44:1-5, 44:17-25, 45:1-4, 50-51, 59:1-10.)  Based upon this evidence, and other evidence set forth in the summary judgment briefs, a jury could reasonably find that Defendant's actions constituted extreme and outrageous conduct.  *See Donaldson v. Am. Banco Corp.*, 945 F. Supp. 1456, 1466 (D. Colo. 1996) (a supervisor's

derogatory comments to pregnant employees were sufficient to support a claim for outrageous conduct); *Mass v. Martin Marietta Corp*., 805 F. Supp. 1530 (D. Colo. 1992) (racial slurs and harassment of co-worker sufficiently supported an outrageous conduct claim.)

Both parties have failed to prove that they are entitled to judgment as a matter of law on Plaintiff's extreme and outrageous conduct claim, and as a result the parties' cross summary judgment motion on this claim is denied.

### 3.      Intentional Interference with Contractual Relations (Fourth Claim)

Plaintiff and Defendant have both additionally moved for summary judgment on Plaintiff's intentional interference with contractual relations claim.

Plaintiff alleges that Defendant intentionally interfered with Plaintiff's contractual relations with DOE "causing [her] not to be able to perform the contract." (Am. Compl. (ECF No. 36) ¶ 39.) Plaintiff also argues that Defendant intentionally interfered with Plaintiff's contractual relations with Navarro, Plaintiff's employer. (ECF No. 160 at 15-16.)

In Colorado, to prove liability for the tort of intentional interference with contractual relations, the plaintiff must establish: (1) the existence of a contractual relationship; (2) the defendant knew or reasonably should have known of the contract; (3) the defendant by words or conduct, or both, intentionally interfered with the relationship; (4) the interference was improper; and (5) the defendant's interference caused damages or losses. *See* CJI-Civ. 24:1 (2010). Interference is defined as "intentional conduct makes another's performance of a contract impossible or more

difficult." *Id*. at 24:4.  Further:

> (1) One who intentionally causes a third person . . . not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.
>
> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

*Mem'l Gardens v. Olympian Sales & Mgmt. Consultants*, 690 P.2d 207, 210-11 (Colo.

1984) (quoting Restatement § 768).

The tort of intentional interference with contractual relations is applicable to a

continuing at-will employment relationship.  *See Jandro v. Foster*, 52 F. Supp.2d 1088,

1099 (D. Colo.1999).  However, "[t]he Restatement provides less protection for

contracts terminable at will because an interference with a contract terminable at will is

an interference with a future expectancy, not a legal right. If a person is free to

terminate a contract when he chooses, the other party has no legal assurance of future

performance."  *Mem'l Gardens*, 690 P.2d at 211.

After reviewing Defendant's arguments and evidence, the Court finds that

Defendant has met its initial burden of showing an absence of evidence to support

Plaintiff's intentional interference with contractual relations claim.  *See Celotex*, 477

U.S. at 325.  Specifically, there is no evidence that Defendant caused Navarro not to

continue its at-will employment contract with Plaintiff.  *See* Restatement § 768(1).

Rather, the undisputed evidence shows that after the July 2009 incident, Plaintiff

continued to be employed with Navarro.  (Dep. of C. Sandoval at 16:22-25, 17:1-18,

40:15-19.)  It is also undisputed that Plaintiff requested Navarro to change her position

at the GFO because she did not wish to have any contact with Defendant.  (*Id*. at

43:17-21.)

Furthermore, there is also no evidence, competent or otherwise, that Defendant

and Navarro, Plaintiff's employer and a third party, were involved in competition

between each other.  *See* Restatement § 768(1)(a).  Rather, Defendant was the

FOIA/Privacy Act Officer, whereas Navarro was a DOE contractor providing support

services.  (Aug. 9, 2011 Order and Judgment at 2; Tr. of Aug. 18, 2010 Evid. Hrg. at 8.)

There is no evidence that Defendant attempted to take over Navarro's DOE contract.

Finally, there is no evidence that Defendant's actions created or continued an unlawful

restraint of trade, or that Defendant's purpose was to advance her interest in competing

with Plaintiff.  *See* Restatement § 768(1)(c)-(d).

Plaintiff did not respond to this portion of Defendant's Motion for Summary

Judgment.  Indeed, Plaintiff made no effort to controvert Defendant's evidence on this

claim, and otherwise failed to respond to any of the legal contentions advanced by

Defendant's Motion.  The only evidence Plaintiff relies on in support of her intentional

interference with contractual relations claim is found in Plaintiff's Motion for Summary

Judgment, where Plaintiff points to a July 23, 2009 e-mail Defendant sent to DOE

headquarters informing them that Plaintiff would no longer be working on FOIA requests

at GFO.  However, while it is undisputed that Defendant did send the e-mail in question, it is also undisputed that Defendant did so at the direction of Mr. Powers, her supervisor.  (Response to Plaintiff's Interrogatory, No. 12, attached to Def. SJ Motion, Ex. 4.)

Plaintiff also points to the fact that on September 16, 2009 she was transferred from her FOIA position to the position of "Procurement Specialist I."  However, it is undisputed that Plaintiff herself asked to be re-assigned to the position of "Procurement Specialist I", a lateral position, so that Plaintiff would not have to work with Defendant. (Navarro Letter to Plaintiff.)

In short, Plaintiff's subjective beliefs regarding this claim do not create a genuine issue of material fact as to whether Defendant intentionally interfered with Plaintiff's contractual relations with Navarro.  As such, Defendant is entitled to summary judgment on Plaintiff's claim for intentional interference with contractual relations.

## 4.    Punitive Damages

Defendant further seeks partial summary judgment on Plaintiff's request for punitive damages.  Defendant argues that Plaintiff cannot show beyond a reasonable doubt that Defendant acted with evil intent, with the purpose to injure Plaintiff, or with wanton and reckless disregard, which would entitle Plaintiff to recover punitive damages.

As an initial matter, the Court notes that Federal Rule of Civil Procedure 56(a) and (b) permit parties to move for summary judgment as to "all or part of a claim." Thus, Rule 56 provides a basis for the Court to resolve less than the whole of a claim

-15-

on summary judgment, such as a remedy or a claim for damages, when a party fails to produce evidence to support a portion of its claim. *See Hamblin v. British Airways PLC*, 71 F. Supp. 2d 303, 307-09 (E.D.N.Y. June 15, 2010)("[T]he right and the remedy are each part of the 'claim' as defined in Rule 56" that may be appropriately tested and resolved by the court on a motion for summary judgment).  As such, the Court may properly resolve Defendant's partial motion for judgment as a matter of law on Plaintiff's request for punitive damages.

In Colorado, to obtain punitive damages, a plaintiff must prove that the alleged injury "is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a).  "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b).  Such a showing must be made beyond a reasonable doubt.  *See W. Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 578 (Colo. App. 2006).

The Court finds that there is a genuine dispute of fact as to whether Defendant acted with wanton and reckless disregard for the rights of Plaintiff.  Given the facts outlined above, a reasonable jury could conclude that Plaintiff is entitled to punitive damages.  Therefore, Defendant's Motion for partial summary judgment on Plaintiff's request for punitive damages is denied.

### 5.    Economic Damages

Finally, Defendant seeks partial summary judgment on Plaintiff's request for

-16-

economic damages.  Defendant argues that Plaintiff cannot establish that Defendant caused any economic damages to Plaintiff as a result of the July 21, 2009 incident.

"Ordinarily, in a tort action, an injured party is entitled to recover damages for the natural and probable consequences of the tort."  *Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1245 (Colo. App. 2000) (citing *McNeill v. Allen*, 534 P.2d 813 (Colo. App. 1975), *aff'd* 50 P.3d 866 (Colo. 2002).   "[T]he recovery of these damages is limited by the requirements that such damages be proximately caused by the tortious act, and that they be reasonably ascertainable."  *McNeill*, 50 P.3d at 872.

The Court finds that Defendant has met her burden of showing an absence of evidence to support any theory Plaintiff may have that she is entitled to recover economic damages.  *See Celotex*, 477 U.S. at 325.

To the extent that Plaintiff was seeking economic damages on the grounds that Defendant's actions caused Plaintiff's: (1) removal from her FOIA specialist position at Navarro; (2) non-selection by DOE for a GS-12 level FOIA specialist position; or (3) non-selection by SDSE, LLC ("SDSE"), the company that took over Navarro's contract at GFO, for an administrative position to which she applied, Plaintiff's contentions fail as a matter of law.  The undisputed evidence shows that the July 21, 2009 incident did not cause Plaintiff any economic damages, and that Navarro did not reduce Plaintiff's salary after the incident, but instead increased it.  (Dep. of C. Sandoval at 16:22-25, 17:1-18, 40:15-19.)  Similarly, undisputed evidence shows that Plaintiff was not qualified for the GS-12 level FOIA position (Julie Riel Aff., ¶¶ 11-15, attached to Def. SJ Motion, Ex. 3), and that Plaintiff was not selected for employment with SDSE because she did not have a college degree (Jennifer Iles Aff., ¶¶ 7-11,

attached to Def. SJ Motion, Ex. 6).

Furthermore, to the extent that Plaintiff is asserting that she is entitled to economic damages because Defendant somehow caused Plaintiff to withdraw from taking classes at Regis University due to Defendant's alleged retaliation against Plaintiff, such a theory of economic damages is without merit.  As described above, there is no evidence that Defendant retaliated against Plaintiff after the July 21, 2009 incident.  Further, there is no evidence to support Plaintiff's conclusory assertion that the July 2009 incident caused her to withdraw from Regis University.  Such conclusory assertions fail to create a material dispute of fact as to economic damages.  *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).  In short, there is no evidence demonstrating that Defendant retaliated against Plaintiff in a manner that caused Plaintiff any economic damages.

In accordance with the foregoing, Defendant's Motion for partial summary judgment on Plaintiff's request for economic damages is granted.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Plaintiff's Motion to Strike the Affidavit of Julie Riel (ECF No. 175) is DENIED;

2.      Plaintiff's Motion for Summary Judgment (ECF No. 160) is DENIED;

3.      Defendant's Motion for Summary Judgment (ECF No. 172) is GRANTED IN PART and DENIED IN PART;

4.      Defendant's Motion for Summary Judgment on Plaintiff's intentional interference with contractual relations claim and Plaintiff's request for economic damages is GRANTED; and

5.      Defendant's Motion for Summary Judgment on Plaintiff's assault, battery, and

extreme and outrageous conduct claims, and on Plaintiff's request for punitive

damages, is DENIED.  These claims shall proceed to trial on January 14, 2013.


Dated this 12th  day of July, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge